Mark T. Lavery, Esq.
1100 W. Cermak Rd., Suite B410
Chicago, IL  60608
Telephone: (312) 380-6110
Facsimile: (312) 361-3509
Email: mark@lifetimedebtsolutions.com
*Pro Hac Vice* Application Pending

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Castilleja, Lizbeth Castilleja, and Anel Salvador, | **COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT AND OTHER EQUITABLE RELIEF** |
| Plaintiffs, | |
| v. | |
| Thunderbird Collection Specialists Incorporated, | **JURY DEMAND ENDORSED HEREIN** |
| Defendant. | |

## PARTIES

1.    Plaintiff, Michael Castilleja ("Michael"), is a natural person who resided in Phoenix, Arizona at all times relevant to this action.

2.    Plaintiff, Lizbeth Castilleja ("Lizbeth"), is a natural person who resided in Phoenix, Arizona at all times relevant to this action.

3.    Plaintiff, Anel Salvador ("Anel"), is a natural person who resided in Phoenix, Arizona at all times relevant to this action.

4.    Defendant, Thunderbird Collection Specialists Incorporated ("TCS"), is an Arizona Corporation with a principal place of business in Scottsdale, Arizona at all times relevant to this action.

**JURISDICTION AND VENUE**

5. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*.

6. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to multiple Plaintiffs' claims occurred in this judicial district and Defendant resides in this District.

**JOINDER**

7. Rule 20 of the Federal Rules of Civil Procedure provides, in part:

   (a) PERSONS WHO MAY JOIN OR BE JOINED.

     (1) Plaintiffs. Persons may join in one action as plaintiffs if:

       (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

       (B) any question of law or fact common to all plaintiffs will arise in the action.

*See* Fed. R. Civ. P. 20(a).

8. "Under the [Federal] Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *See United Mineworkers of Am. V. Gibbs*, 383 U.S. 715, 724, 86 S. Ct. 1130, 1138 (1966).

9. "Under Ninth Circuit case law, joinder is liberally permitted." *Baker v. Midland Funding LLC*, 2014 U.S. Dist. LEXIS 11511, *7-8 (D. Ariz. Jan. 30, 2014); *citing League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1997) ("[P]ermissive joinder is to be construed liberally in order to promote trial convenience and

to expedite the final determination of disputes, thereby preventing multiple lawsuits.");

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966).

10.   "Fed. R. Civ. P. 20(a)(2) states that defendants may be joined in one action as defendants if: '(a) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (b) any question of law or fact common to all defendants will arise in the action.'" *Bleiberg Entm't, LLC v. Doe*, 2013 U.S. Dist. LEXIS 101347, *3 (D. Ariz. July 19, 2013).

11.   "Courts assess the facts of each case individually to determine whether joinder is sensible in light of the underlying policies of permissive party joinder. Joinder in a single case may be appropriate—even though there might be different occurrences—if the claims involve enough related operative facts." *Montes v. Bank of Am.*, 2014 U.S. Dist. LEXIS 46201, *4 (D. Nev. Feb. 21, 2014) *citing Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) ("'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not such much upon the immediateness of their connection as upon their logical relationship.").

12.   "The common question need not predominate; that's a requirement for class actions; not for permissive joinder." *See Lee v. Cook County*, 635 F.3d 969, 971 (7th Cir. 2011).

13.   Claims alleging a continuing pattern and practice have been held to arise out of the same transaction or occurrence. *Morehouse v. Idaho State Dep't of Corr.*, 2012 U.S. Dist. LEXIS 56951, *12 (D. Idaho Apr. 23, 2012).

14. In the FDCPA context, allegations by multiple plaintiffs that they were subjected to the same collection practices by a single debt collector support joinder under Rule 20.  *See Scott v. Fairbanks Capital Corp.*, 284 F. Supp. 2d 880, 888-89 (S.D. Ohio 2003).

15. Joinder is particularly appropriate at the pre-trial stage of litigation where "the alleged acts occurred are quite similar for each [p]laintiff with the majority of each [p]laintiff's allegations occurring [during a limited time period]."  *See Nelson v. Chertoff*, 2008 U.S. Dist. LEXIS 82981, *16 (N.D. Ill. Sep. 10, 2008).

**ALLEGATIONS OF FACT COMMON TO ALL PLAINTIFFS**

16. At all times relevant to this action, TCS collected consumer debts.

17. TCS regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

18. The principal source of TCS's revenue is debt collection.

19. TCS is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

20. As described, *infra*, TCS attempted to contact each Plaintiff to collect a debt that was incurred primarily for personal, family, or household purposes.

21. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

22. Each Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

23. Within the past twelve (12) months, TCS called each Plaintiff employer on multiple occasions in connection with the collection of a debt.

24. TCS has a policy and practice to contact consumer's employers and consumers at their place of employment in violation of the FDCPA to compel and coerce payment of debts. See *Burress v. Thunderbird Collection Specialists Incorporated* et al, 2:13cv1821 (D. Az.); *Henneke v. Thunderbird Collection Specialists Incorporated et al*, 2:14cv2088 (D. Az.);

and *Mothershed et al v. Thunderbird Collection Specialists Incorporated et al,* 2:14cv1719 (D. Az.).

25.   In this case, TCS followed the aforementioned policy and practice with respect to all Plaintiffs.

## LEGAL ARGUMENTS COMMON TO ALL PLAINTIFFS

26.   Section 1692c of the FDCPA provides, in part:

(a) Communication with the consumer generallyWithout the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—

(1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location;

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer; or

(3) at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication.

(b) Communication with third parties.  Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(a)-(b).

27.   Section 1692d of the FDCPA provides, in part:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

15 U.S.C. § 1692d.

28.     Section 1692b of the FDCPA provides:

Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall—

(1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;

(2) not state that such consumer owes any debt;

(3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information;

(4) not communicate by post card;

(5) not use any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt; and

(6) after the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to communication from the debt collector.

15 U.S.C. § 1692b.

29.     Debt collectors such as TCS go beyond the limited scope of Section 1692b when communicating with consumers' employers and leaving messages.  See *Wideman v. Monterey Fin. Servs., Inc.*, 2009 U.S. Dist. LEXIS 38824 (W.D. Pa. 2009)(debt collector violated FDCPA by leaving message with third party for consumer to call back); see also *Thomas v. Consumer Adj. Co., Inc.*, 579 F. Supp. 2d 1290 (E.D. Mo. 2008).

**ADDITIONAL FACTORS SUPPORTING JOINDER**

30. The witness(es) that TCS will produce in response to a notice of deposition pursuant to Rule 30(b)(6) will likely be the same individual(s) for each Plaintiff.

31. The information that TCS will provide in response to interrogatories related to TCS's policies, practices, and procedures will likely be the same, or substantially similar, for each Plaintiff.

32. The evidence that TCS will produce in response to requests for production of documents related to TCS's policies, practices and procedures will likely be the same, or substantially similar, for each Plaintiff.

33. Joinder will allow a single trier of fact to assess the pattern and frequency of TCS's alleged misconduct, which is a relevant factor in the legal issues and damages in this case.

34. Joinder avoids the need to conduct multiple trials and empanel multiple juries to resolve each Plaintiff's fairly straightforward claim that TCS violated the FDCPA.

**INDIVIDUAL COUNTS AS TO EACH PLAINTIFF**

*COUNT ONE – Michael Castilleja and Lizbeth Castilleja*

**Violation of the Fair Debt Collection Practices Act**

35. Within the last twelve (12) months, TCS began contacting Lizbeth's employer and asked her supervisor for information that would allow TCS to garnish Lizbeth's wages in connection with an alleged debt.

36. Thereafter, TCS contacted Lizbeth's employer again and requested to speak with Lizbeth's supervisor for the purpose of requesting information that would allow TCS to garnish Lizbeth's wages.

37. On each occasion when TCS contacted Lizbeth's employer, TCS revealed information to Lizbeth's co-worker and/or supervisor regarding a debt allegedly owed by Lizbeth.

38. In addition, within the last twelve (12) months, TCS began contacting Michael's place of employment.

39. On at least one occasion, TCS spoke with one of Michael's co-workers and discussed more than was reasonably needed to confirm or correct Michael's location information.

40. Michael and Lizbeth's co-workers relayed their conversations with TCS to Michael and Lizbeth.

41. TCS has not obtained a judgment against Michael or Lizbeth related to the debt TCS was attempting to collect.

42. Despite TCS's threat of garnishment, no garnishment has been ordered or otherwise authorized against Lizbeth or Michael.

43. On December 15, 2014, Lizbeth and Michael's attorney contacted TCS and provided TCS with the attorney's contact information.

44. Nevertheless, TCS directly communicated with Lizbeth by having its attorney send Lizbeth a letter dated March 13, 2015.

45. TCS caused the Castillejas to suffer emotional distress including personal humiliation, embarrassment and anger. *See McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 957 (9th Cir. 2011) ("The FDCPA provides for the award of actual damages. See 15 U.S.C. § 1692k(a)(1)…Actual damages include damages for personal humiliation, embarrassment, mental anguish and emotional distress. There is no fixed standard or measure in the case of intangible items such as humiliation, embarrassment, mental anguish or emotional distress. Mental and emotional suffering and distress pass under

various names such as mental anguish, nervous shock and the like. It includes all highly unpleasant mental reactions such as fright or grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea. The law does not set a definite standard by which to calculate compensation for mental and emotional suffering and distress. Neither is there any requirement that any witness express an opinion about the amount of compensation that is appropriate for the kind of law.")

46. TCS violated 15 U.S.C. § 1692c by making improper and unauthorized communications prohibited by the FDCPA.

<u>*COUNT TWO – Michael Castilleja and Lizbeth Castilleja*</u>

**Violation of the Fair Debt Collection Practices Act**

47. Michael and Lizbeth re-allege and incorporates by reference Paragraphs 35 through 45 above as if fully set forth herein.

48. TCS violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which was to harass, oppress, or abuse Michael and Lizbeth.

<u>*COUNT THREE – Michael Castilleja and Lizbeth Castilleja*</u>

**Violation of the Fair Debt Collection Practices Act**

49. Michael and Lizbeth re-allege and incorporates by reference Paragraphs 35 through 45 above as if fully set forth herein.

50. TCS violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

*COUNT FOUR – Anel Salvador*

**Violation of the Fair Debt Collection Practices Act**

51.   In June of 2014, TCS contacted Anel on her cellular telephone in connection with the collection of a debt.

52.   Anel advised TCS that she was at work at the time and asked TCS not to contact her until her next payday, which was in one (1) week.

53.   Notwithstanding Anel's request that TCS not call her for a week, immediately thereafter, TCS called the main phone number at Anel's place of employment and asked to speak with Anel.

54.   TCS was transferred to Anel and spoke with her.

55.   Anel reiterated to TCS that Anel was unable to pay and renewed her request that TCS call her on payday.

56.   Approximately one (1) week later, TCS contacted Anel at her place of employment in connection with the collection of a debt.

57.   During this communication, Anel offered to make weekly payments in the amount of fifteen dollars ($15).

58.   In response, TCS told Anel that her offer was unacceptable and demanded a that Anel make a one hundred dollar ($100) payment.

59.   Anel advised TCS that she was unable to pay one hundred dollars ($100).

60.   At that point, TCS asked Anel to transfer TSC to the HR department at Anel's place of employment.

61.   In response, Anel inquired why TCS wanted to speak with the HR department.

62. TCS told Anel that TCS wanted to verify Anel's employment and obtain information about Anel's earnings.

63. Anel refused to transfer TCS to the HR department and attempted to explain to TCS that Anel could not make a larger payment because she had to pay her rent.

64. In response, TCS suggested that Anel postpone paying her rent so that she could pay TCS the amount it was demanding.

65. Anel felt frustrated, intimidated, and upset as a result of her conversation with TSC.

66. One of Anel's co-workers overheard Anel's conversation with TSC, which embarrassed Anel.

67. Thereafter, Anel retained an attorney and provided TCS with the attorney's contact information.

68. On July 30, 2014, TCS contacted the office of Anel's attorneyand spoke with a paralegal ("Paralegal").

69. During this communication, Paralegal confirmed that the attorney's office represented Anel and instructed TCS to stop calling Anel.

70. In response, TCS told Paralegal that TCS would not stop calling Anel unless Anel or the attorney sent a written cease and desist letter via certified mail.

71. In addition, TCS stated something substantially similar to, "If you don't want us to call her [Anel], we'll have to take it to the next level."

72. TCS's threat to "take it to the next level" was an imminent threat of litigation.

73.    TCS caused Anel to suffer emotional distress including personal humiliation, embarrassment and fear. See *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 957 (9th Cir. 2011)

74.  TCS violated 15 U.S.C. § 1692c by engaging in improper and unauthorized communications prohibited by the FDCPA.

## COUNT FIVE – Anel Salvador

**Violation of the Fair Debt Collection Practices Act**

75.  ANEL re-alleges and incorporates by reference Paragraphs 51 through 73 above as if fully set forth herein.

76.  TCS violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which was to harass, oppress, or abuse Anel.

## COUNT SIX – Anel Salvador

**Violation of the Fair Debt Collection Practices Act**

77.  ANEL re-alleges and incorporates by reference Paragraphs 51 through 73 above as if fully set forth herein.

78.  TCS violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## JURY DEMAND

79.  Each Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

80.  Each Plaintiff prays for the following relief:

    a.  Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    b.  For such other legal and/or equitable relief as the Court deems appropriate.

**[SIGNATURE ON FOLLOWING PAGE]**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RESPECTFULLY SUBMITTED,

Hyslip & Taylor, LLC, LPA


By:____/s/ Mark T. Lavery_____
One of Plaintiff's Attorneys

Mark T. Lavery, Esq.
1100 W. Cermak Rd., Suite B410
Chicago, IL  60608
Telephone: (312) 380-6110
Facsimile: (312) 361-3509
Email: mark@lifetimedebtsolutions.com
Pro Hac Vice Application Pending